UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THIEN CHI VUONG,<br><br>            Petitioner,<br><br>      v.<br><br>MOISES BECERRA, et al.,<br><br>            Respondents. | No. 1:25-cv-01847-DC-CSK (HC)<br><br>ORDER GRANTING PETITIONER'S MOTION FOR TEMPORARY RESTRAINING ORDER<br><br>(Doc. No. 2) |

This matter is before the court on Petitioner's motion for a temporary restraining order (Doc. No. 2), which Petitioner concurrently filed with a petition for a writ of habeas corpus brought under 28 U.S.C. § 2241, challenging his ongoing immigration detention. (Doc. No. 1.) For the reasons explained below, the court will grant Petitioner's motion for a temporary restraining order.

**BACKGROUND**

**A.    Factual Background**

Petitioner is a citizen of Vietnam who was admitted to the United States as a refugee on or about October 23, 1985. (Doc. Nos. 1 at 4; 11-1 at 2.) Petitioner's status was adjusted to lawful permanent resident on that same day. (Doc. No. 11-1 at 2.) Petitioner has continuously resided in the United States since he entered the country in 1985. (Doc. No. 1 at 4.)

On September 17, 2009, Petitioner was convicted in the Superior Court of California,

Santa Clara County, on one count of conspiracy to commit a crime and two counts of obtaining money/labor under false pretenses, and Petitioner thereafter served prison time in state custody on each of those counts. (Doc. Nos. 1 at 4; 11-1 at ¶ 6.) Petitioner first encountered Immigration and Customs Enforcement ("ICE") while in state custody. (Doc. No. 11-1 at ¶ 6.) On April 4, 2011, an Immigration Judge ordered Petitioner removed from the United States to Vietnam pursuant to Section 237(a)(2)(A)(iii) of the Immigration and National Act ("INA"), based on his felony convictions under a law relating to a theft or burglary offense, and conspiracy to commit an aggravated felony. (*Id.* at 67, 71.) Petitioner waived his right to appeal the final order of removal to Vietnam. (*Id.* at 71.)

On June 10, 2011, ICE released Petitioner from custody on an order of supervision ("OSUP") after failing to remove him to Vietnam. (Doc. Nos. 11-1 at 73; 75–78; 1 at 5.) Petitioner has been released on his OSUP for the past fourteen years without incident. (Doc. No. 1 at 5.) On November 16, 2025, ICE agents detained Petitioner outside of his home in San Jose, California, for "violating United States immigration laws." (Doc. No. 11-1 at 93.) Petitioner was then transferred to the Mesa Verde Ice Processing Center, where he remains detained. (Doc. No. 1 at 2.)

**B.     Procedural Background**

On December 15, 2025, Petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. No. 1.) In his petition, Petitioner brings the following claims: (1) violation of his due process rights under the Fifth Amendment to the Constitution based on his re-detention; (2) violation of his due process rights under the Fifth Amendment based on his prolonged detention without process; (3) violation of his due process rights under the Fifth Amendment based on conditions of confinement; and (4) violation of his due process rights under the Fifth Amendment based on ICE's unlawful refusal-to-cooperate determination. (*Id.* at 6–7.)

Also on December 15, 2025, Petitioner filed the pending motion for a temporary restraining order. (Doc. No. 2.) In his motion, Petitioner seeks immediate release from immigration detention, an order that he be placed back on an OSUP, and an order that he is not re-detained "absent a court order." (*Id.* at 6.) Respondents filed their opposition to Petitioner's

2

motion on December 18, 2025.[1] (Doc. No. 11.) Petitioner filed a reply thereto on December 19, 2025. (Doc. No. 12.)

## LEGAL STANDARD

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citation omitted). The standard governing the issuing of a temporary restraining order is "substantially identical" to the standard for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). To obtain either form of injunctive relief, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in favor of the moving party; and (4) that an injunction is in the public interest. *Winter*, 555 U.S. at 20 (2008). A plaintiff seeking a temporary restraining order bears the burden of proving these elements. *Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009).

A district court may consider "the parties' pleadings, declarations, affidavits, and exhibits submitted in support of and in opposition to the [motion for injunctive relief]." *Cal. Rifle & Pistol Ass'n, Inc. v. Los Angeles Cnty. Sheriff's Dep't*, 745 F.Supp.3d 1037, 1048 (C.D. Cal. 2024); *see also Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009). Any evidentiary issues "properly go to weight rather than admissibility." *Am. Hotel & Lodging Ass'n v. City of Los Angeles*, 119 F. Supp. 3d 1177, 1185 (C.D. Cal. 2015).

/////

/////

/////

---

[1] In their opposition, Respondents move to strike and dismiss "all respondents other than Ron Murray from this case." (Doc. No. 11 at 1 n.1) The proper respondent rule states that the proper respondent in a "core" habeas petition challenging present physical confinement is the immediate custodian. *Doe v. Garland*, 109 F.4th 1188, 1197 (9th Cir. 2024). Petitioner has properly named his immediate custodian, Ron Murray, the Warden of the Mesa Verde ICE Processing Center. However, if Respondents seek to dismiss the other Respondents from this action, they must do so in a properly noticed motion.

# ANALYSIS

**A.     Likelihood of Success on the Merits**

      1.     <u>Statutory Framework</u>

Except in limited circumstances, "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days ( . . . referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1)(A).

> The removal period begins on the latest of the following:
>
> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
>
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

Here, there is no suggestion by Respondents that Petitioner's removal order became final recently such that Petitioner's removal period is presently ongoing. Rather, the record suggests Petitioner's removal order was final in 2011, when Petitioner waived his right to appeal his final order of removal. (Doc. No. 11-1 at 71.) Further, "[d]uring the removal period, the Attorney General shall detain the alien." 8 U.S.C. § 1231(a)(2)(A). Where "an alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision . . . ." 8 U.S.C. 1231(a)(3); *see also Alva v. Kaiser*, No. 25-cv-06676-RFL, 2025 WL 2419262, at *3 (N.D. Cal. Aug. 21, 2025) ("As mandated by Congress, the default status after the 90-day removal period is therefore release on conditions, not detention."). Here, Petitioner was released on June 15, 2011, subject to OSUP conditions. (Doc. No. 11-1 at ¶ 9.) As a result, Petitioner is no longer subject to detention under § 1231(a)(2). The court therefore considers whether Petitioner's re-detention in November 2025 is lawful under other statutory or regulatory provisions.

      2.     <u>Lawfulness of Petitioner's Re-detention</u>

"Noncitizens subject to a final removal order may be released pursuant to 8 C.F.R. § 241.4(l) or 8 C.F.R. § 241.13." *Khamba v. Albarran*, No. 1:25-cv-01227-JLT-SKO, 2025 WL 2959276, at *7 (E.D. Cal. Oct. 17, 2025) (citation omitted). These regulations also govern the

4

revocation of a noncitizen's release from custody. *See id.* Respondents indicate that here, Petitioner was re-detained pursuant to 8 C.F.R. § 241.13(i)(1) for violating a condition of supervised release. (Doc. No. 11 at 2.)

Under 8 C.F.R. § 241.13(i)(1), ICE is authorized to revoke a noncitizen's release for violation of a condition of supervised release. Specifically,

> [a]ny alien who has been released under an order of supervision under this section who violates any of the conditions of release may be returned to custody and is subject to the penalties described in section 243(b) of the Act. In suitable cases, the [Headquarters Post-order Detention Unit] shall refer the case to the appropriate U.S. Attorney for criminal prosecution. The alien may be continued in detention for an additional six months in order to effect the alien's removal, if possible, and to effect the conditions under which the alien had been released.

8 C.F.R. § 241.13(i)(1). When revoking a noncitizen's release, ICE must notify the noncitizen "of the reasons for revocation of his or her release," and "conduct an initial informal interview promptly after his or her return to [] custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.13(i)(3).

Government agencies are required to follow their own regulations. *United States ex rel Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954); *Nat'l Ass'n of Home Builders v. Norton*, 340 F.3d 835, 852 (9th Cir. 2003); *see also Waldron v. I.N.S.*, 17 F.3d 511, 518 (2d Cir. 1993) ("[W]hen a regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute, and [the government] fails to adhere to it, the challenged deportation proceeding is invalid."). In analyzing whether DHS followed the applicable regulations in detaining a noncitizen, other courts have found that "DHS's failure to follow its own procedural regulations may constitute a due process violation." *Diaz v. Wofford*, No. 1:25-cv-01079-JLT-EPG, 2025 WL 2581575, at *7 (E.D. Cal. Sept. 5, 2025) (citing *Zhu v. Genalo*, No. 1:25-cv-06523-JLR, 2025 WL 2452352, at *9 (S.D.N.Y. Aug. 26, 2025) ("The Government has significant discretion to enforce the immigration laws and, indeed, to revoke Petitioner's Order of Supervision . . . [b]ut it must do so consistent with the requirements of its own regulations and the Due Process Clause.")).

Here, Petitioner has demonstrated he is likely to succeed on his claim that his re-detention

violates his due process rights because ICE likely did not comply with the applicable regulations under 8 C.F.R. § 241.13(i) when revoking Petitioner's release. First, there is no evidence on the current record to suggest that Petitioner was notified "upon revocation" of the "reasons for revocation of his [] release," as required by the governing regulation. *See* 8 C.F.R. § 241.13(i)(3). Petitioner's immigration records, provided by Respondents, show that at most, ICE agents verbally told Petitioner he was being arrested for "violating United States immigration laws." (Doc. No. 11-1 at 93.) While Respondents provide some documents concerning Petitioner's immigration status, they do not provide any documentation that Petitioner was provided with a formal "Notice of Revocation of Release," nor any evidence to suggest that Petitioner was ever notified that he allegedly violated his OSUP. *Cf. J.R.M.J. v. Wofford*, No. 1:25-cv-01567-DC-SCR, 2025 WL 3295593, at *5 (E.D. Cal. Nov. 26, 2025) (finding that petitioner had not shown ICE failed to comply with the requirement to inform petitioner of the reasons for revocation where respondents served a formal notice of revocation on petitioner, which included a detailed explanation for revocation and was signed and dated by petitioner). Indeed, Respondents do not allege in their opposition that Petitioner was affirmatively notified of the reason for his re-detention, only that "[o]n October 30, 2025, Petitioner failed to report to a scheduled check-in," and was "arrested for violating the conditions of his release supervision and his supervision was revoked." (Doc. No. 11 at 3.)

Second, there is no evidence on the current record to suggest that Petitioner was afforded an informal interview for the purpose of responding to "the reasons for revocation stated in the notification," as required by the governing regulation. *See* 8 C.F.R. § 241.13(i)(3). Respondents admit that though Petitioner "admitted to alienage and deportability" in an interview, the documents memorializing the interview are silent as to whether Petitioner was provided "an opportunity to respond to his failure to abide by his conditions of release." (Doc. No. 11 at 2.) Further, a "[p]etitioner must be told *what* circumstances had changed . . . in order to meaningfully respond to the reasons and submit evidence in opposition." *Phakeokoth v. Noem*, No. 3:25-cv-02817-RBM-SBC, 2025 WL 3124341, at *4 (S.D. Cal. Nov. 7, 2025) (quoting *Sarail A. v. Bondi*, No. 25-cv-2144-ECT-JFD, 2025 WL 2533673, at *10 (D. Minn. Sept. 3, 2025)). Thus, even if an

6

informal interview occurred, based on this current record, Petitioner could not have had a meaningful opportunity to respond to the reasons for revocation because those reasons were not adequately stated to Petitioner. Indeed, Petitioner disputes in his reply brief that he was ever properly served with a notice of the check-in appointment he allegedly missed, and that such an appointment was even scheduled for that day. (Doc. No. 12 at 3.) Petitioner could have raised these arguments had he been given proper notice and an opportunity to be heard, but based on the record before the court, it appears he had not been given such notice and opportunity to be heard. Therefore, Petitioner has demonstrated he is likely to succeed on the merits of his claim that his re-detention violates his due process rights.

**B.     Irreparable Harm**

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Where, as here, the "alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005) (quoting Wright, Miller, & Kane, Federal Practice and Procedure, § 2948.1 (2d ed. 2004)). The Ninth Circuit has also noted that "unlawful detention certainly constitutes 'extreme or very serious' damage, and that damage is not compensable in damages." *Hernandez v. Sessions*, 872 F.3d 976, 999 (9th Cir. 2017).

Therefore, the second *Winter* factor weighs in favor of granting Petitioner's request for injunctive relief.

**C.     Balance of the Equities and Public Interest**

The court now turns to the last two *Winter* factors. The balance of the equities and public interest analyses merge when the government is the opposing party, as is the case in this action. *See Drakes Bay Oyster Co. v. Jewell,* 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

"Just as the public has an interest in the orderly and efficient administration of this country's immigration laws, [] the public has a strong interest in upholding procedural protections

7

against unlawful detention." *Vargas v. Jennings*, No. 20-cv-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020) (internal quotation marks omitted); *see also Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution."). Petitioner has demonstrated that he is likely unlawfully detained in violation of his due process rights and is suffering irreparable harm as a result.

On the other hand, the burden on Respondents in releasing Petitioner from detention is minimal. "[T]he only potential injury that the government faces is a 'short delay' in detaining Petitioner[] if it ultimately demonstrates" that detention is necessary to effectuate removal. *Valencia Zapata v. Kaiser*, No. 25-cv-07492-RFL, 2025 WL 2741654, at *13 (N.D. Cal. Sept. 26, 2025) (quoting *Salcedo Aceros v. Kaiser*, No. 25-cv-06924-EMC, 2025 WL 2637503, at *14 (N.D. Cal. Sept. 12, 2025)). Respondents cannot reasonably assert that the public and government will be harmed in any legally cognizable sense by being enjoined from violating Petitioner's due process rights, which is the case here. *See Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983) (finding "the INS cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations."). The court finds that the balance of equities and public interest weigh in favor of granting Petitioner's requested injunctive relief. Therefore, all four *Winter* factors weigh in favor of granting Petitioner's motion for a temporary restraining order.

**D.    Bond**

A district court may grant preliminary injunctive relief "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65. "Rule 65(c) invests the district court with discretion as to the amount of security required, if any." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003)). "In particular, '[t]he district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct.'" *Id.*

The parties do not address whether the imposition of a security bond is warranted. The court finds that no security bond is required here, given that courts regularly waive a security bond in similar cases and that Respondents have not established the need to impose a security bond in this case. *Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011); *Lepe v. Andrews*, No. 25-cv-01163-KES-SKO, 2025 WL 2716910, at *10 (E.D. Cal. Sep. 23, 2025); *Pinchi v. Noem*, No. 25-cv-05632-RMI-RFL, 2025 WL 1853763, at *4 (N.D. Cal. Jul. 4, 2025).

## CONCLUSION

For the reasons explained above:

1. Petitioner's motion for a temporary restraining order (Doc. No. 2) is GRANTED as follows:

    a. Respondents are ORDERED to immediately release Petitioner from Respondents' custody; and

    b. Respondents are ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, which include, at a minimum, strict compliance with the requirements of 8 C.F.R. § 241.13(i);

2. Respondents are ORDERED TO SHOW CAUSE no later than **December 29, 2025**, as to why this court should not issue a preliminary injunction on the same terms as this Order. Petitioner may file a response thereto by no later than **December 30, 2025**. Respondents may file a reply to Petitioner's response by no later than **December 31, 2025**. If the parties agree upon a less demanding briefing schedule, the court will consider the parties' proposal.

IT IS SO ORDERED.

Dated:   **December 22, 2025**

_____
Dena Coggins
United States District Judge

9